UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DOUGLAS HILL,

                                 Plaintiff,

                                              15-CV-6212-FPG

v.                                                     DECISION AND ORDER

FRONTIER TELEPHONE OF ROCHESTER, INC.,

                                 Defendant.
_____

## INTRODUCTION

Plaintiff Douglas Hill commenced this action alleging racial discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e, *et seq.* ("Title VII"), on the basis that his employer, Frontier Telephone of Rochester, Inc., subjected him to a racially hostile work environment. ECF Nos. 1, 12.

Currently pending before the Court is Defendant's Motion for Summary Judgment. ECF No. 34.[1] Having considered the moving papers, the record evidence, and the applicable law, the Court grants Defendant's Motion for Summary Judgment and dismisses the Complaint in its entirety.

---

[1] In connection with Defendant's motion, it submits an Attorney Declaration with supporting Exhibits A through E (ECF Nos. 34-1 through 34-7); Declaration of Tracy Owen with supporting Exhibits A through K (ECF Nos. 34-8 through 34-19); a Rule 56 Statement of Material Facts (ECF No. 34-20); and a Memorandum in Support of Summary Judgment (ECF No. 34-21).

In opposition, Plaintiff submits an Attorney Declaration (ECF No. 38-13); Response to Defendant's Statement of Material Facts and Memorandum of Law in Opposition to Summary Judgment (ECF No. 38); and supporting Exhibits 1 through 12 (ECF Nos. 38-1 through 38-12). Plaintiff also submits what is captioned as "Plaintiff's Separate Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment (ECF No. 38 at 7-14) in addition to his Response to Defendant's Rule 56 Statement (ECF No. 38 at 4-6). Although the Court has reviewed this submission, it notes that the submission does not comport with the Local Rules of Civil Procedure, which require "correspondingly numbered paragraphs, and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried." Loc. R. Civ. P. 56(a)(2).

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following material facts, drawn from the parties' Rule 56 Statements and evidentiary submissions, are undisputed unless otherwise noted and are viewed in the light most favorable to Plaintiff, the non-moving party.

**I.     Overview**

Frontier hired Plaintiff, an African-American male, in 1998 as a temporary employee. Plaintiff later applied for and/or was promoted into a regular position and continued to work for Frontier for over 15 years.

Frontier has policies that prohibit discrimination and harassment based on an individual's race or other protected categories, and prohibit retaliation against individuals who engage in protected activity. These policies include: Diversity Policy, Equal Opportunity Policy, Non-Discrimination Policy, Code of Business Ethics, and Human Resources Policy Manual. Frontier also has a broader "Open Door Policy," which provides a process for employees to raise concerns to higher levels of management to resolve work-related problems fairly, like if an employee feels that established policies or practices have been violated or have not been consistently applied.

Plaintiff signed and acknowledged receipt of Frontier's Code of Conduct on January 26, 1998. During the course of his employment, Plaintiff received training on compliance with Frontier's non-discrimination and harassment policies, which included information as to how to make discrimination or harassment reports.

On or about May 6, 2014, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that he had been verbally harassed because of his race in violation of Title VII. In response, Frontier submitted a Position Statement

to the EEOC, dated August 4, 2014, with attachments, denying liability and requesting that the EEOC issue a no cause finding regarding Plaintiff's Charge of Discrimination.

On January 13, 2015, the EEOC issued a Dismissal and Notice of Right to Sue letter, stating that it could not conclude that the information obtained established a statutory violation and that Plaintiff had 90 days to file a lawsuit.

Plaintiff commenced this action on April 13, 2015. ECF No. 1. Plaintiff's Amended Complaint alleges that Frontier discriminated against him in violation of Title VII based on his race by subjecting him to a racially hostile work environment after he returned from a leave of absence on April 22, 2013. ECF No. 12.

## II. 2013-2014 Incidents

Plaintiff alleges that during the summer of 2013, he worked on an assignment with a co-worker named Terry to install equipment in the field, during which Terry used the term "nigger-rig." Def. Att'y Decl., Ex. B ("Pl. Dep.") at 90-91 & Ex. C.

In connection with his Worker's Compensation hearing, Plaintiff testified that Terry:

> apologized profusely . . . . He explained to me that he grew up with that saying, and I heard it before. I mean I heard it that people say that. I know what it means, it means when guys go to the neighborhood in the hood they see something wired up and they call it that. So he said when he grew up that's all he heard, and it was a genuine slip.

Def. Att'y Decl., Ex. E ("Pl. WC Tr.") at 84-85. Plaintiff, in his sworn affidavit, states that he was "very upset, shocked, hurt, and also offended" by the remark. Pl. Ex. I, ¶ 11. Plaintiff also testified that this was the only incident of alleged verbal harassment by Terry and that Terry never made a statement like this one to him again. Pl. Dep. 42-43.

3

Plaintiff complained of a second incident involving the phrase "nigger-rig." Plaintiff testified that he initiated conversation with another co-worker, Kevin B., in which he related to Kevin B. the remark Terry made:

> [W]e had to go out and work the next day, and it was still bothering me a little bit. And I said, you know, "Terry, you know, used the word N-er-rig." Now, I said "N-er-rig." I didn't say "nigger-rig." And he said, "N-er?" And I said, "You know, the N word. Rig at the end of it." Then he . . . kept repeating it. "What, nigger-rig?" I said "Yo, man. I don't want to hear that."

Pl. Dep. 44-45.

The following day, Plaintiff wore "a nice Adidas outfit," which prompted Kevin B. to ask him: "Are you a drug dealer? Are you a pimp? Are you a basketball player?" Pl. Dep. 46-47; Pl. WC Tr. 81-83. Plaintiff complained to his supervisor Don Moscaret about Kevin B.'s comments.

Human Resources Manager Tracy Owen held a meeting with Plaintiff, Kevin B., Moscaret, and Plaintiff's union representative to address the complaint. According to Plaintiff, he told Moscaret that he wanted a meeting and that he would not work with Kevin B. again. Although he did not have to work with Kevin B. after that, Plaintiff testified that "[w]e had to all four be there to work on this project." Pl. Dep. 47. Plaintiff testified separately that, "I requested not to work with him . . . . So we had a meeting with Human Resources and everybody else you know, and then it was instructed that he can't joke no more . . . . And that's how they resolved it, where we don't work together." Pl. WC. Tr. 83.

On January 7, 2014, Plaintiff stopped into Frontier's Genesee office during his lunch break.[2] As he entered the building, another co-worker named Don M. said, "Here come [sic] the janitor." Pl. Dep. 49-50. At some point thereafter, Don M. and approximately four other co-workers were in the break room when Don M. used the phrase "nigger, please," during a story. *Id.*

---
[2] Plaintiff was not assigned to this office, but was ordering lunch nearby. Pl. Dep. 49-50.

Plaintiff stated that he felt that Don M. was "calling [him] the N-word." Pl. WC Tr. 78. Don M. called Plaintiff later that day and told him, "Doug, I didn't know that you took it like that." *Id.* Plaintiff testified that Don M. "tried to apologize" and "didn't think it would hurt me or didn't think it was that bad." *Id.* at 79.

Plaintiff reported the incident to supervisor Moscaret who immediately called Technical Supervisor Dionne Staples to inform her of the situation. That afternoon, Staples spoke with the three co-workers involved to discuss the incident and gather information. Staples forwarded this information to Owen in Human Resources to continue the investigation.

On or about January 23, 2014, Plaintiff went on a leave of absence through April of 2014. Owen continued the investigation by interviewing Plaintiff by telephone and speaking with Don M. and three other employees in person. After concluding its investigation, Frontier determined that Don M. used racial terminology in violation of Frontier's employee conduct standards and its diversity policies including the Code of Conduct. Don M. was disciplined with a three-day unpaid suspension and received a written warning that similar conduct may subject him to further disciplinary action up to and including termination. He also had to complete courses in diversity and workplace civility. There were no further incidents involving Don M.

### III. 2012 Incidents

Plaintiff's Amended Complaint also refers to incidents in 2012 involving a co-worker named Ron R. In the Spring of 2012, Plaintiff filed an Ethics Point Complaint with Frontier regarding Ron R.'s conduct. Ron R. allegedly blocked Plaintiff's car in the parking lot on multiple occasions, told Plaintiff that he was worthless, needed more training, and that "a monkey could do [his] job." Pl. Dep. 27-28; Pl. WC Tr. 14-15. Plaintiff filed a complaint with the "Ethics Point Hotline" in October of 2012, to report a hostile work environment based on Ron R.'s conduct.

5

Plaintiff met with various Human Resources representatives and his union representative, and at the end of the meeting they agreed that Human Resources would conduct a civility/diversity training course on professionalism that "everyone had to take," which occurred approximately one year later. Pl. Dep. 29-30. Owen testified that the civility training for all technicians in the Operations Department was held in February or March of 2014, in response to the Genesee Street incident earlier that year. Owen Decl., Ex. A ("Owen Dep.") at 82-83.

Plaintiff took a leave of absence from October of 2012 through April of 2013. When Plaintiff returned from leave, Ron R. commented: "Nice to see you back, Doug," and "good day, isn't it?" According to Plaintiff, Ron R. was "trying to get under his skin," and to "set [him] off." Pl. Dep. 56-59. Although Plaintiff was supposed to be re-assigned to a new location, he states that he still had routine contact with Ron. R. *Id.*

Plaintiff indicates that it was after his return to work in April of 2013 that he "began to experience the racial discrimination and hostile work environment that formed the basis of the instant complaint." ECF No. 38 at 8, ¶ 8.

## DISCUSSION

I. **Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986); *see Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). Regarding materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477

U.S. at 248. More importantly, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Thus, the Court's function in deciding a summary judgment motion is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. When a properly supported summary judgment motion is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250.

As the Second Circuit observed in *Duse v. Int'l Business Machines Corp.*, 252 F.3d 151, 158 (2d Cir. 2001), "[i]n assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." 252 F.3d 151, 158 (citing *e.g., Anderson*, 477 U.S. at 255). However, "[i]f the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of the claim, any factual disputes with respect to other elements of the claim become immaterial and do not suffice to defeat a motion for summary judgment." *Duse*, 252 F.3d at 158 (citing *e.g.*, *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Burke v. Jacoby,* 981 F.2d 1372, 1379 (2d Cir. 1992), *cert. denied,* 508 U.S. 909 (1993); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11-12 (2d Cir. 1986) (the existence of a factual issue will not suffice to defeat a motion for summary judgment where that issue is not material to the ground of the motion), *cert. denied,* 480 U.S. 932 (1987)).

## II.     Title VII

Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.

§ 2000e-2. Plaintiff's racial discrimination claim is premised upon a hostile work environment theory.[3] To prevail on such a theory, Plaintiff must show: (1) that the harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment, and (2) that there is a specific basis for imputing the conduct creating the hostile work environment to the employer. *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013).

"[A] plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 320-21 (2d Cir. 2015). A plaintiff must also produce evidence that the hostility occurred because of his protected characteristic. *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014).

In determining whether an environment is "hostile" or "abusive," courts may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance . . . . [but] no single factor is required." *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (internal quotation marks and citation omitted). "Usually, a single isolated instance of harassment will not suffice to establish a hostile work environment unless it was extraordinarily severe." *Id.* at 153. Furthermore, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is

---

[3] Although Plaintiff has briefed the law pertaining to intentional discrimination, *see* Pl. Mem. 19-22, he did not raise any such claim in his EEOC complaint, and his Amended Complaint does not specifically allege disparate treatment or disparate impact discrimination based upon his race. Pl. Exs. 7, 12.

8

permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

## III. Analysis

Defendant argues that summary judgment is appropriate because Plaintiff cannot establish the requisite elements of a Title VII claim to proceed to trial. Def. Mem. 12-29. It also contends that Plaintiff's claims arising from incidents occurring before 2013 are time-barred. *Id.* at 19.

### A. Allegations after Spring of 2013

#### 1. Severe or Pervasive

Plaintiff relies on the following instances of verbal harassment to support his hostile work environment claim: (1) Terry's use of the phrase "nigger-rig," (2) Kevin B.'s repeating of the phrase "nigger-rig" and referring to Plaintiff as a "pimp" and "drug dealer," and (3) Don M.'s use of the phrase "nigger please" and calling Plaintiff a janitor.[4]

"For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity . . . . meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments[.]" *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (internal quotations, citation, and alteration omitted). This inquiry depends on the quantity, frequency, and severity of those slurs, considered cumulatively. *Id.*

Assuming that the subjective element of the hostile work environment claim has been satisfied, *see Goldschmidt v. N.Y.S. Aff. Housing Corp.*, 380 F. Supp. 2d 303, 312 (S.D.N.Y. 2005) (court assumes "at the outset . . . that the subjective element of the hostile work environment claim has been satisfied, that is, plaintiff perceived his work environment to be hostile and abusive"),

---

[4] The Court also considers the allegations relating to Ron R. dating back to 2012 in examining whether Plaintiff has established an objectively hostile working environment.

9

Plaintiff must demonstrate that the conduct was so severe or pervasive as to alter his employment conditions. During Plaintiff's 15-year career with Frontier, he complained of four instances of racial epithets and/or racially charged jokes by his co-workers between 2012 and 2014, including use of the word "nigger" on two occasions. Viewing the evidence in Plaintiff's favor reveals conduct that is abhorrent and insensitive—but not conduct that is actionable under Title VII.

In *Holt v. Roadway Package Sys., Inc*., 506 F. Supp. 2d 194, 204 (W.D.N.Y. 2007) (Larimer, J.), this Court found, in considering the totality of the plaintiff's five-year tenure at his place of employment, that the terms "boy," "porch monkey," and "nigger-rigged" allegedly used on separate and isolated occasions by his fellow workers, "while unquestionably crude and offensive, comprise stray remarks which do not rise to the level of a hostile work environment[.]" *Id.* Likewise, in *Hannon v. Wilson Greatbatch, Ltd*., No. 00-CV-0203, 2002 WL 1012971, at *3-4 (W.D.N.Y. Apr. 24, 2002) (Elfvin, J.), this Court found that multiple uses of the word "nigger" were not sufficiently severe and pervasive to alter the conditions of plaintiff's work environment. *Id.* (citing *Schwapp v. Town of Avon*, 118 F.3d 106, 110-11 (2d Cir. 1997) ("[The] mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII. For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated instances of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comment.")).

Courts elsewhere within this Circuit have reached similar conclusions. *See Pagan v. N.Y.S. Div. of Parole*, 98 Civ. 5840, 2003 WL 22723013, at *6 (S.D.N.Y. Nov. 18, 2003) (four racial remarks within one year did not create a hostile work environment); *Dorrilus v. St. Rose's Home*, 234 F. Supp. 2d 326, 335 (S.D.N.Y. 2002) (employee calling plaintiff "El Negro" four times within

one month did not create a hostile work environment); *Stembridge v. City of N.Y.*, 88 F. Supp. 2d 276, 286 (S.D.N.Y. 2000) (seven racial comments over three years did not create a hostile work environment even when plaintiff's supervisor called him an "uppity nigger" and "boy"); *Turner v. Nat'l R.R. Passenger Corp.*, 181 F. Supp. 2d 122, 132 (N.D.N.Y. 2002) (repeated use of "nigger" by employees in connection with O.J. Simpson trial did not create hostile work environment); *Brown v. Middaugh*, 41 F. Supp. 2d 172, 187-88 (N.D.N.Y. 1999) (history of references to plaintiff as a "nigger," "lazy nigger," "piece of shit nigger," and "good for nothing nigger," while "despicable, odious and offensive" were not "sufficiently severe or pervasive such that plaintiff's hostile work environment claim can survive summary judgment"); *Bolden v. N.Y. Hous. Auth.*, No. 96 Civ. 2835, 1997 WL 666236, at *2 (S.D.N.Y. Oct. 27, 1997) ("five racial references over a period of six weeks" by the defendant—including at least one use of the word "niggers"—was insufficient to sustain a hostile work environment claim under Title VII).

Plaintiff further acknowledges that the comments were made in the context of jokes (regarding Plaintiff's apparel) or were careless remarks ("n-er rig"). Pl. Dep. 47-48; Pl. WC Tr. 83-85. Without more, Plaintiff's claim fails as a matter of law. *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment.") (internal citation omitted).

It is problematic for Plaintiff that his opposition to Defendant's motion lacks evidence sufficient to raise a triable issue of fact and does not cite case law to support his position that his co-workers' use of racial slurs on multiple occasions was severe or pervasive. Pl. Mem. 22-24. Rather, he states in conclusory fashion that "[i]n this case, he alleges several incidents; not merely one. But the severity prong is satisfied, as it happens, so that even if it were one incident

complained of, Plaintiff would have satisfied this first prong of the "[hostile work environment test]." *Id.* at 23. Presumably Plaintiff hinges his severity argument on the particular epithet used in this case. While it is true that courts have recognized that the use of the word "nigger" standing alone may establish a hostile work environment where a supervisor directs it toward a subordinate, this is not such a case. *Cf. Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 571 (2d Cir. 2000) (quoting *Rogers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)) ("[N]o single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of subordinates."), *superseded on other grounds by* N.Y.C. Local L. No. 85. Accordingly, the two isolated comments made by different co-workers at separate times during the course of two years do not satisfy the objective proof requirement of a hostile work environment claim.

Assuming, *arguendo*, the harassment was sufficiently severe or pervasive to alter Plaintiff's employment conditions and create an abusive working environment, he must still show that there is a specific basis for imputing the conduct creating the hostile work environment to the employer. *Summa*, 708 F.3d at 124. As explained below, Plaintiff's proffer in this regard is insufficient to withstand summary judgment.

### 2. Imputed Liability

"Under Title VII, individuals may not be held personally liable." *Philip v. Gtech Corp.*, No. 14 Civ. 9261, 2016 WL 3959729, at *12 (S.D.N.Y. July 20, 2016) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313-14 (2d Cir. 1995)). Plaintiff brings this Title VII hostile work environment claim against his employer, Frontier. For such claims to proceed, Plaintiff "must show that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997).

Where, as here, a "coworker harasses the plaintiff," an employer can be "directly liable for [that] employee's unlawful harassment if the employer was negligent with respect to the offensive behavior." *Id.* at 2441. "When harassment is perpetrated by the plaintiff's coworkers, an employer will be liable if the plaintiff demonstrates that 'the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 (2d Cir. 2011) (quoting *Perry*, 115 F.3d at 149); *accord Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009).

First, it is undisputed that Frontier has policies prohibiting harassment and providing avenues for complaints. Owen Decl., Exs. B-E. Plaintiff acknowledged receiving and signing the Code of Conduct. *Id.*, Ex. E. Frontier also trained Plaintiff as to where and how to make internal reports of discrimination, and he was a union member during his approximately 15 years of employment. Pl. Dep. 34-36, 105-06. Finally, Plaintiff previously availed himself of the complaint process in October of 2012 when he reported Ron R.'s conduct to the Ethics Point Hotline. Pl. Dep. 30-31; Pl. WC Tr. 72-73. He therefore raises no triable issue of fact as to whether Defendant provided a reasonable avenue for complaint. *See, e.g., Russell v. N.Y. Univ.*, No. 15-CV-2185, 2017 WL 3049534, at *28 (S.D.N.Y. July 17, 2017) ("[Plaintiff] does not contend that [Defendant] failed to provide a reasonable avenue for complaint, nor could she. The record unequivocally shows that [Defendant] had a robust anti-discrimination and anti-harassment policy, which included a detailed complaint procedure with at least five different outlets to which an employee could make a complaint. Moreover, there is no dispute that [Plaintiff] in fact filed a series of formal complaints with OEO, thereby taking advantage of at least one of the avenues of complaint that [Defendant] provided."); *see also, e.g., Notaro v. Fossil Indus., Inc.*, 820 F. Supp. 2d 452, 459 (E.D.N.Y. 2011) (finding no issue of fact as to whether there was a reasonable avenue of complaint

13

where plaintiffs acknowledged receipt of employee handbook containing policy and procedure for sexual harassment complaint). Thus, Plaintiff must show that Defendant knew of the harassment and failed to act.

To that end, Plaintiff argues that he "proffered several instances in which he sought the help and intervention of Defendant to stamp out the racial discrimination he was experiencing, only to have inadequate protection or intervention from Defendant." Pl. Mem. 23.

"Despite offering a reasonable avenue of complaint to plaintiff, employer defendants can still be held liable if plaintiff can show that they knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Duch*, 588 F.3d at 763. "This standard requires a plaintiff to show that (1) someone had actual or constructive knowledge of the harassment, (2) the knowledge of this individual can be imputed to the employer, and (3) the employer's response, in light of that knowledge, was unreasonable." *Id.*

After Terry's use of the term "nigger-rig" in July of 2013, Plaintiff confronted Terry directly who immediately apologized for using a term he had heard growing up.[5] The following day, Plaintiff relayed the conversation and offending term to Kevin B., who in turn repeated the term multiple times in Plaintiff's presence. Plaintiff reported Kevin B.'s remarks to supervisor Moscaret and requested that he no longer have to work with Kevin B. Pl. WC Tr. 82-83. Frontier's Human Resources Department investigated Plaintiff's complaints, and there was a meeting between Plaintiff and Kevin B. to address those issues. Owen Dep. 35-43. According to Plaintiff, Frontier instructed Kevin B. not to tell any more jokes, and they would not work together again. There were no further incidents involving Kevin B. Pl. Dep. 47-48; Pl. WC Tr. 83-85.

---

[5] Plaintiff testified that Terry was a "good guy" and that they could continue to work together. Pl. Dep. 42-43; Pl. WC Tr. 85. Similarly, Owen indicated that Plaintiff "initially did not want to use Terry's name because he didn't want him to get in trouble, and then he was upset because Kevin repeated it." Owen Dep. 36. He therefore does not and cannot assert that Defendant's response to Terry's remark was unreasonable.

As to Don M.'s January 7, 2014 comments, Plaintiff reported the incident immediately to supervisor Moscaret who in turn notified Staples. Staples communicated with three witnesses (two involved in the conversation and one who was standing nearby within earshot) and with Don M. to investigate the incident. Staples then contacted Human Resources to continue the investigation. Owen Decl., Ex. H ("Staples WC Tr.") at 15-16; Pl. Ex. 6.

On February 19, 2014, while Plaintiff was on his second leave of absence, Frontier determined that Don M. violated its Code of Conduct and suspended him without pay for three days and issued a written warning. Additionally, Don M. was to complete an online diversity course and a classroom course in workplace civility. Owen Decl., Ex. I. He was advised that if he failed to meet the expectations regarding his conduct he would be subject to further disciplinary action "up to and including termination." *Id.*

Around the same time, John Mitchell, a Sales and Service Technician, e-mailed Staples requesting a meeting to address his concern over Don M.'s remarks: "we need to know what is expected of us when confronted with the use of the 'N' word in our presence." Pl. Ex. 4.

As a result, "[Frontier] decided that it would make sense that we should make sure that everybody understands what a hostile work environment is, and what it is to be civil to each other and, therefore, we had training and sent everybody to do it." Owen Dep. 83. According to Owen, that training took place in February or March of 2014. *Id.*

The facts here, viewed in Plaintiff's favor, do not suggest that Frontier failed to take appropriate remedial action in response to the aforementioned incidents. *See Hsueh v. N.Y.S. Dep't of Fin. Servs.*, No. 15 CIV. 3401, 2017 WL 3671179, at *7 (S.D.N.Y. Aug. 24, 2017) (action taken by defendant was "appropriately remedial and prompt," where offending coworker was placed on administrative leave and there was a thorough investigation into plaintiff's complaint); *see also,*
15

*e.g., Andrus v. Corning, Inc.*, No. 14-CV-6667, 2016 WL 5372467, at *7 (W.D.N.Y. Sept. 26, 2016), *appeal dismissed*, No. 16-3659, 2017 WL 5127330 (2d Cir. May 30, 2017) (liability not imputed where defendant company "provided several avenues for complaint and conducted a prompt investigation, which culminated in the termination of [offending co-worker's] employment approximately two weeks after Plaintiff's complaint"). Plaintiff's belief that the sanctions against Kevin B. were not harsh enough, *see* Pl. Mem. at 18, also does not create an issue of fact sufficient to overcome summary judgment. *See Chenette v. Kenneth Cole Prods.*, Inc., No. 05-CV-4849, 2008 WL 3176088, at *11 (S.D.N.Y. Aug. 6, 2008) (rejecting argument that defendant's response was inadequate merely because it took no punitive action); *Hudson v. Fischer*, No. 06-CV-1534, 2008 WL 5110974, at *7 (N.D.N.Y. Dec. 2, 2008) ("A victim of . . . harassment is entitled to a remedy reasonably calculated to end the harassment, but the victim is not entitled to choose her remedy and then argue that the employer's response is unreasonable because she does not get what she wants.").

In sum, Plaintiff does not raise an issue of fact as to whether liability should be imputed to Frontier.

### B. Allegations before Spring of 2013

Defendant also argues that Plaintiff's Amended Complaint contains time-barred allegations relating to Ron. R.'s conduct in 2012. Def. Mem. 19. Plaintiff does not dispute that those incidents did not occur within 300 days of Plaintiff's filing of his EEOC charge on May 6, 2014. Pl. Dep. 107; Pl. WC Tr. 10-21, 38-64; *see* 42 U.S.C. § 2000e–5(e)(1) (claims of discrimination must be filed with the EEOC within 300 days of the alleged discriminatory act); *see also Hassan v. City of Ithaca, N.Y.*, No. 10-CV-06125, 2012 WL 1190649, at *3 (W.D.N.Y. Apr. 9, 2012). Moreover, Plaintiff does not address or refute Defendant's timeliness argument.

ECF No. 38 at 14-24. Plaintiff therefore appears to concede that the allegations are untimely. *Cristofaro v. Lake Shore Cent. Sch. Dist.*, No. 06-CV-0487, 2011 WL 635263, at *8 (W.D.N.Y. Feb. 11, 2011), *aff'd*, 473 F. App'x 28 (2d Cir. 2012) ("Plaintiff did not respond to this argument, and therefore appears to concede that the allegations are untimely.").

For all the reasons stated, Plaintiff raises no genuine issue of material fact for trial with respect to his claim that Frontier subjected him to a racially hostile work environment. Accordingly, Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's Amended Complaint asserting racial discrimination under Title VII is DISMISSED.

## CONCLUSION

Defendant's Motion for Summary Judgment (ECF No. 34) is GRANTED, and Plaintiff's Amended Complaint (ECF No. 12) is DISMISSED WITH PREJUDICE. The Clerk of the Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 10, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court